## State v. Green
*[Cite as 2 AOA 369]*

*Case No. 56677
Cuyahoga County, (8th)
Decided March 15, 1990*

R.C. 2945.77
Crim. R. 31(D)

*John T. Corrigan, Esq., Cuyahoga County Prosecutor, Justice Center 1200 Ontario Street, Cleveland, OH 44113, For Plaintiff-Appellee.*

*Michael J. Downing, Esq. 768 East 185th Street Cleveland, OH 44119, For Defendant-Appellant.*

GRADY, J.

Defendant-appellant, Anthony Green, appeals from his conviction for one count of rape and one count of aggravated robbery.

On May 29, 1988, Jennifer Tennant (hereinafter referred to as the victim), was receiving treatment at the Cleveland Clinic for liver cancer. In order to facilitate the medical treatment, the victim lodged at the Cleveland Clinic Hotel. At approximately 10:00 p.m., the victim answered a knock at her door whereupon an intruder entered the hotel room. The intruder demanded and received money in the amount of $40 from the victim, raped the victim, and than purloined the victim's Sony Walkman radio. The intruder left the victim without the commission of any further acts of violence.

On June 22, 1988, the appellant was indicted by the grand jury of Cuyahoga County for one count of rape in violation of R.C. 2907.02 and one count of aggravated robbery in violation of R.C. 2911.01.

On October 13, 1988, a jury trial was commenced with regard to the two counts of the indictment. On October 21, 1988, the jury returned a verdict of guilty of the one count of rape and guilty of the one count of aggravated robbery. The jury was polled upon request by the appellant. Juror No. 1, however, indicated that she did not subscribe to the guilty verdicts. The trial court immediately ordered the jury to retire for further deliberations. After further deliberations, the jury once again returned a finding of guilty as to the counts of rape and aggravated robbery. The jury, upon being polled, unanimously aknowledged the verdicts of guilty.

On October 26, 1988, the trial court sentenced the appellant to incarceration within the Correctional Reception Center Orient, Ohio, of a term of ten years to twenty-five years with regard to the offense of rape and ten years to twenty-five years with regard to the offense of aggravated robbery. The trial court further ordered that the sentences of incarceration run consecutive to each other.

Thereafter, the appellant timely brought the instant appeal.

I.

Having a common basis in law and fact, the appellant's first and second assignments of error shall be considered simultaneously by this court.

The appellant's first assignment of error is that:

"THE TRIAL COURT ERRED IN REFUSING TO GRANT DEFENDANT'S MOTION FOR A NEW TRIAL AFTER A POLING (sic) OF THE JURY REVEALED THAT ONE JUROR WAS NOT IN AGREEMENT WITH THE VERDICT."

The appellant's second assignment of error is that:

"THE TRIAL COURT ERRED IN NOT FURTHER INSTRUCTING THE JURY AS TO ITS RESPONSIBILITIES BEFORE THE JURY RETURNED FOR FURTHER DELIBERATION FOLLOWING THE REVELATION. THE JURY WAS NOT UNANIMOUS IN ITS VERDICT."

The appellant, through his first and second assignments of error, argues that the trial court should have reinstructed the jury upon discovery that the jury verdict was not unanimous. The appellant also argues that the trial court should have granted a motion for mistrial upon discovery of the dissenting juror.

The appellant's first and second assignments of error are not well taken.

On October 21, 1988, the jury informed the trial court that it had reached a verdict. A polling of the jury, however, revealed that Juror No. 1, although having signed the verdict form, did not concur orally in the jury's verdict of guilty:

"MR. DRAPER: Yes.

"THE COURT: By statute, the defense counsel can have you polled to see whether or not these are your verdicts. That is the question.

"Get the file. The jury will be at ease.

"The question the Court ask (sic) is, are these your verdicts. Your answer is yes or no.

"Mrs. Poindexter?

"JUROR #1: No.

"THE COURT: Are these your verdicts? Yes or no?

"JUROR #1: No.

"THE COURT: Not your verdicts. The jury will retire and continue deliberating.

"(Thereupon, the jury was adjourned to the jury room.)" (Tr. 483).

The record clearly reveals that Juror No. 1 did not orally agree to the verdict of guilty and that the trial court immediately and without further instruction ordered the jury to retire for further deliberations.

Crim. R. 31(D), which deals with the polling of a jury after receipt of a verdict, provides that:

"(D) Poll of jury. When a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged."

In addition, R.C. 2945.77, which is a codification of Crim. R. 31(D). provides that:

"When the jurors agree upon their verdict, they must be conducted into court by the officer having them in charge.

"Before the verdict is accepted, the jury may be polled at the request of either the presecuting attorney or the defendant. If one of the jurors upon being polled declare that said verdict is not his verdict, the jury must further deliberate upon the case."

Neither Crim. R. 31(D) nor R.C. 2945.77 require that the jury be reinstructed as to its responsibilities prior to further deliberation. Both the Criminal Code and the Revised Code merely require that the jury further deliberate upon the case.

In addition, a review of the limited Ohio case law which has dealt with the issue of a dissenting juror upon polling has failed to disclose any requirement of reinstruction of the jury when further deliberation is required. Cf. *Emmert* v. *State* (1933), 127 Ohio St 235; *State* v. *Brown* (1953, 110 Ohio App. 57; *State* v. *Fields* (1960, 16 Ohio Ops. 2d 290. The recent decision is *State* v. *Howard* (1989), 42 Ohio St 3d. 18, deals with a jury that reports deadlock and is not applicable to this case.

Therefore, pursuant to the application of Crim. R. 31(D), R.C. 2945.77 and the existing case law of this state, we find that the trial court was not required to reinstruct the jury prior to ordering further jury deliberations.

We further find that the trial court did not err in denying the appellant's motion for a "new trial" as premised upon the failure of Juror No. 1 to orally concur in the jury's verdict of guilty. It should be noted that appellant actually made an oral motion for mistrial and not a formal written motion for a new trial pursuant to Crim. R. 33.

The grant or denial of a motion for mistrial is within the sound discretion of the trial court. *State* v. *Stout* (1987), 42 Ohio App. 3d 38; *Bowman* v. *Alvis* (1950), 88 Ohio App. 229. In addition, a motion for mistrial can only be granted where the defendant's right to a fair trial has been prejudiced by the complaint of misconduct or irregularity. *State* v. *Clark* (1974), 40 Ohio App. 2d 365.

In this case, the appellant's right to a fair trial was not prejudiced by the acknowledgement of Juror No. 1 that the verdict of guilty was not her own verdict. Within forty-five minutes of returning for further deliberations, the jury returned a unanimous verdict of guilty which was properly reflected in the *second* jury polling. Thus, the trial court did not abuse its discretion in denying the appellant's motion for mistrial.

The appellant's first and second assignments of error are not well taken.

## II.

The appellant's third assignment of error is that:

"THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF THE VICTIMS (sic) IDENTIFICATION OF THE DEFENDANT FROM A PHOTOGRAPHIC ARRAY, WHEN THAT PHOTOGRAPHIC ARRAY WAS FLAWED AND INHERENTLY PREJUDICIAL."

The appellant, in his third assignment of error, argues that the victim's identification of the appellant by way of a photographic array was prejudicial. Specifically, the appellant argues that the photographic identification array was tainted and unduly suggestive.

This assignment of error is not well taken.

A review of the record fails to indicate that the appellant raised the issue of a defective photographic identification procedure to the trial court. Thus, absent plain error, this court is precluded from examining the appellant's third assignment of error.

"An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. (Paragraph one of the syllabus of *State* v. *Glaros*, 170 Ohio st. 471, approved and followed.)" *State* v. *Williams* (1977), 51 Ohio St. 2d 112, paragraph one of the syllabus.

Notwithstanding the failure of the appellant to call to the trial court's attention the alleged error associated with the photographic identification procedure, a substantive review of the appellant's claim fails to disclose that the photographs used in the identification procedure were tainted and unduly suggestive.

The United States Supreme Court in *Stovall* v. *Denno* (1967), 388 U.S. 298 at 302, held that:

"[A] claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, ***."

In addition, the United States Supreme Court, in *Neil* v. *Biggers* (1972, 409 U.S. 188 and *Manson* v. *Braithwaite* (1977), 432 U.S. 98, developed a two-prong test in determining the reliability of an identification procedure. Initially, the appellant must demonstrate that the identification procedure was unnecessarily and impermissible suggestive. The trial court must then balance the suggestiveness of the identification procedure against the following factors: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of elapsed time between the crime and the confrontation.

Appellant objects that the victim was shown two photo arrays, both of which included a photo of appellant. In the first all other photos shown were typical "mug shots", while appellant's was a wallet-type photo darker in tone and with surface scratching. In the second series appellant also appeared in a "mug shot" that included an information card indicating his physical description. Appellant argues that the victim would have been more likely to identify him because of the descriptive factors which matched those of her attacker.

It is not a requirement for the use of photo arrays that all pictures shown must be of the same type. Neither is it required that they bear no differing marks or blemishes. Neither is it required that but one photo of an accused be used. The only inquiry is whether the photo or procedure used was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-indentification (sic)." *Simmons* v. *United States* (1968), 390 U.S. 377, at 384. While appellant was distinguished from other persons shown in the array by the quality and number of pictures of him used, we find that those points of distinction do not rise to the level of mistake and prejudice contemplated by *Simmons*.

"The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due proces (sic) so long as the identification possesses sufficient aspects of reliability. (Footnote omitted.)" *Mason* v. *Braithwaite, supra,* at 106.

The testimony of the victim is adduced at trial revealed that: 1) the victim viewed the appellant during the entire period of the criminal episode and in fact made eye contact with the appellant; 2) the victim's degree of attention was acute during the criminal episode; 3) the victim provided a positive description of the appellant to the police; 4) the victim, upon viewing the second set of photographs, immediately recognized the appellant as her assailant, and 5) a period of only four days

elapsed between the criminal episode and the photographic identification of the appellant.

We therefore find that the victim's identification of the appellant through the second photographic array was reliable and overcame any questions of the photographs being tainted or suggestive. The appellant was not prejudiced nor was he denied a fair trial. *State* v. *Jackson* (1971), 26 Ohio St. 2d 74.

Therefore, the appellant's third assignment of error is not well taken.

### III.

The appellant's fourth assignment of error is that:

"THE TRIAL COURT ERRED IN NOT ORDERING A NEW TRIAL BASED UPON INSTANCES OF PROSECUTORIAL MISCONDUCT, WHICH INCLUDED REFERENCES TO THE DEFENDANTS (sic) FAILURE TO PRODUCE ALIBI WITNESSES, AND DUROGATORY (sic) COMMENTS ABOUT THE DEFENDANT."

The appellant, in his fourth assignment of error, argues that he was denied a fair an impartial trial as a result of prosecutorial misconduct during closing arguments. Specifically, the appellant argues that he was prejudiced by the prosecutor's comments on the failure of the appellant to call witnesses to corroborate his alibi and the prosecutor's characterization of the appellant as a "fraud, a phony, and a liar."

The appellant failed to object to the alleged misconduct of the prosecutor during closing arguments. Absent the denial of a fair trial, the failure to object to improper remarks and comments of the prosecutor constitutes a waiver of error. Cf. *State* v. *Wade* (1978), 53 Ohio St. 2d 182. Therefore, the appellant's fourth assignment of error is not well taken.

### IV.

The appellant's fifth assignment of error is that:

"THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO THE FAILURE OF DEFENSE COUNSEL TO MAKE TIMELY OBJECTIONS, TO: 1) THE INTRODUCTION OF THE PHOTOGRAPHIC EVIDENCE, TESTIMONY REGARDING THESE PHOTOGRAPHS; OR 2) THE NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT."

The appellant, in his fifth assignment of error, argues that defense counsel was ineffective as a result of the failure to timely object to the photographic identification procedure and the failure to object to the misconduct of the prosecutor during closing arguments.

This assignment of error is not well taken.

In order to substantiate a claim of ineffective assistance of counsel, the appellant must demonstrate that defense counsel deprived him of a fair trial. The appellant must specifically demonstrate that: 1) defense counsel's performance during trial was seriously flawed and deficient; and 2) the result of the trial would have been different had defense counsel provided proper representation during trial. *Strickland* v. *Washington* (1984), 466 U.S. 668; *State* v. *Brooks* (1986), 25 Ohio St. 3d 144.

Upon a review of the record we find no prejudice to appellant's right to a fair trial. The photographs were not objectionable. The prosecutor's comments, while intemperate, did not deprive appellant of a fair trial. That is evident in view of the substantial proof otherwise of appellant's guilt. *State* v. *Wade, supra; State* v. *McAdams* (March 17, 1988) Cuyahoga App. No. 53593, unreported. Appellant was failed to satisfy the requirement of *Strickland* that he show that the result of the trial would be different but for the alleged ineffective assistance of counsel. Cf. *State* v. *Lott* (March 16, 1986), Cuyahoga App. No. 54537, unreported.

Therefore, the appellant's fifth assignment of error is not well taken.

*Judgment affirmed.*

FRANCIS E. SWEENEY, P.J. and JOHN F. CORRIGAN, J., Concur.

*JUDGE THOMAS J. GRADY, of the 2nd Appellate District of Ohio, sitting by assignment.