DECISION AND JOURNAL ENTRY
Defendant Edward L. Freeman has appealed from his conviction in the Medina County Common Pleas Court for assault of a peace officer, a violation of R.C. 2903.13(A) and (C)(3). This Court affirms.
 I.
On January 15, 1999, Medina County Drug Task Force Agent David Posten was working with Medina City Police as part of an undercover counter-drug operation in Medina, Ohio. Agent Posten stood wearing plain clothes near an unmarked police vehicle on Bronson Street while undercover Medina City Patrolman Paul Cerino sat inside the vehicle monitoring Agent Posten's situation.
Two men later identified as Daryl Inman, and Michael Powell, approached Agent Posten and engaged him in conversation. Moments later, Defendant, imitating a football player carrying an imaginary football, jogged from a nearby house to Agent Posten's location. As Defendant jogged in between the two men and Agent Posten, he bumped the two men and lightly brushed Agent Posten. Defendant then circled around behind Agent Posten and stopped approximately five to ten feet away from him.
When the confrontational conversation between Agent Posten and Inman abruptly turned into a physical altercation, Defendant approached Agent Posten with his hands outstretched. In response to Defendant's actions, Agent Posten kicked Defendant while still grappling with Inman. As this was happening, Patrolman Cerino emerged from the vehicle, drew his gun, and announced himself as a police officer. Patrolman Cerino ordered everyone to stop what they were doing. In response to Patrolman Cerino's order, Inman jogged away down the street, Powell essentially remained in place with his hands raised, and Defendant walked briskly from the north side to the south side of Bronson Street. Shortly thereafter, several police officers arrived on the scene and arrested Defendant and Powell. Inman was also arrested a few blocks away.
Defendant was charged with assault of a peace officer, a violation of R.C. 2903.13(A) and (C)(3). Upon Defendant's own motion, his case was joined with co-defendant Powell's for the purpose of trial. After the presentation of closing arguments, the trial court properly instructed the jury to deliberate.
During deliberations, the jury indicated to the bailiff that they had reached a verdict in one case, but remained deadlocked in the other. After consultation with the attorneys, the trial court issued a Howard charge to the jury. State v. Howard (1989),42 Ohio St.3d 18, 20-22 (the Howard charge reminds jurors of their duty to try to reach a unanimous verdict). The trial court directed the Howard charge toward resolution of the deadlocked case, but it did not take the verdict in the other case. Id.
After approximately thirty minutes of deliberation had elapsed, the bailiff returned from checking the jury's progress and reported the following:
 I went back in to check their status, as indicated by you, at twenty five after twelve. They asked me, one of the jurors asked me what would happen if she changed her mind on the one verdict after she has already signed it, and I didn't say anything, I didn't know, I would ask the Judge. Another lady chimed in, do ask because I want to change my verdict too. [sic]
 After consulting the attorneys, the judge brought the jury back into the courtroom and asked the foreman if there was a verdict that had been signed by all twelve jurors, to which the foreman replied, "That is correct." The trial court read the jury's guilty verdict in Defendant's case and polled each individual juror. After discovering that two jurors disagreed with the verdict, the trial court remanded the jurors back to the jury room and consulted with the attorneys.
The State requested that the jury be ordered to continue its deliberations after perhaps being charged with an additional instruction at the discretion of the court. Powell's attorney and Defendant's attorney each objected to further jury deliberations and requested that the trial court acknowledge a "hung jury" and, accordingly declare a mistrial in each case. Taking the attorneys' requests under advisement, the trial court kept the jurors sequestered throughout a recess for lunch, and then ordered them to continue deliberations.
The jury deliberated for approximately an hour. The foreman then indicated that they did not reach a verdict in Powell's case, but they did reach a unanimous verdict in Defendant's case. The trial court announced the jury's guilty verdict for Defendant and, once again, polled the individual jurors. The polling revealed that each juror agreed with the verdict.
Defendant's attorney renewed his motion for declaration of a mistrial, but the trial court denied the motion and entered judgment on the verdict. Defendant was convicted for assault of a peace officer and subsequently sentenced to ten months in prison. Defendant has appealed, asserting three assignments of error.
 II. A. Assignment of Error No. 1 The trial court erred by not declaring a mistrial when two jurors changed their votes for a guilty verdict after signing the verdict form, but before the verdict was announced and accepted and the court, and by overruling Defendant's motion for a new trial.
 In his first assignment of error, Defendant has essentially argued that by not declaring a mistrial or granting his motion for a new trial, the trial court abused its discretion. Specifically, he has argued that two jurors recanting their votes for a guilty verdict after signing the verdict form amounts to impermissible irregularity in the proceedings. This Court disagrees.
Crim. R. 33(A)(1) provides that a new trial may be granted for irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, which prevents the defendant from having a fair trial. State v. Otis (Sept. 11, 1996), Summit App. No. 17489, unreported, at 8. However, the grant or denial of a motion for a new trial for reasons of irregularity or jury misconduct pursuant to Crim.R. 33 is reposed to the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. State v.Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. An abuse of discretion is more than an error of law or judgment; "it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." State v. Bresson (1990), 51 Ohio St.3d 123,129.
Crim.R. 31(D) provides that the trial court shall poll the jury verdict at the request of either party or may poll the verdict sua sponte to ascertain whether there is an unanimous verdict. If upon polling, a juror indicates that the verdict is not his or her own, R.C. 2945.77 states that it is appropriate for the jury to further deliberate. Additionally, Crim.R. 31(D) provides that "[i]f upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged."
It is undisputed that the trial court in this case properly polled the jury after the guilty verdict was returned. When the polling revealed that two jurors expressed disagreement with the guilty verdict, the trial court had the discretion to declare a mistrial or to order further deliberations. State v. Brumback
(1996), 109 Ohio App.3d 65, 72-73. The trial court, therefore, did not err procedurally or exceed the limits of its discretion by ordering the jury to conduct further deliberations in an attempt to rehabilitate the votes of two jurors before the verdict was accepted.
Defendant's argument for patent irregularity in the trial proceedings essentially rests upon his reading of the holding inState v. Green (1990) 67 Ohio App.3d 72, 77-78 (holding that the trial court's denial of the defendant's motion to declare a mistrial based on rehabilitation of a juror's verdict was not an abuse of discretion). In Green, a polled juror announced that the guilty verdict was not her own, and the court sent the jury back to further deliberate. Id., at 75. After further deliberations, the Green jury returned an unanimous verdict of guilty that was confirmed by a second jury polling. Id., at 77-78. In overruling the defendant's motion for a new trial, the Green court stated that defendant's right to a fair trial was not prejudiced by the additional deliberations. Id.
Defendant would distinguish the rehabilitation of one juror's verdict in the Green case from the rehabilitation of two jurors' verdicts in the present case because rehabilitation of two jurors' verdicts actually amounts to the masking of a per se "hung jury" situation. Defendant would further distinguish Green from the present action because the jury in that case returned with a verdict only forty-five minutes after receiving the order to continue deliberations, unlike the jury in the instant case, which was twice ordered to continue deliberations on the second day of deliberations after receiving a Howard charge.
This Court finds no support for the proposition that a trial court's rehabilitation of more than one juror vote amounts to patent procedural error by necessarily hiding a "hung jury" situation. No such bright-line rule exists in Ohio case law, and this Court declines the invitation to so hold. Additionally, after reviewing the trial record in the instant case, this Court concludes that the trial court's rehabilitation of two juror votes appears to have been properly conducted. Defendant's argument that a juror may have improperly acquiesced to the guilty verdict after lengthy deliberations is nothing more than mere speculation. As such, this Court cannot conclude that the trial court abused its discretion. Defendant's first assignment of error is overruled.
 B. Assignment of Error No. 2. The trial court erred by ruling that it is not necessary that the accused know that the victim of an assault is a police officer, in order to elevate the level of the offense of assault of a peace officer to a felony of the [fourth] degree.
 In his second assignment of error, Defendant has argued that the trial court erred by ruling that it is not necessary for an accused to know in advance that the victim of his alleged assault is a police officer in order to elevate the first degree misdemeanor offense of assault to assault of a police officer, which is a felony of the fourth degree. Specifically, Defendant has argued that the elements of R.C. 2903.13 require the State to show that he was aware that his conduct would probably cause a certain result, and that he was also aware that the person being harmed was a peace officer. This Court disagrees.
R.C. 2903.13(A) provides, in part, that "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" R.C. 2903.13(C)(3) provides that one who violates R.C. 2903.13 is guilty of assault unless "the victim of the offense is a peace officer" engaged "in the performance of [her] official duties," which elevates the assault to felony of the fourth degree. A peace officer is defined by R.C. 2935.01(B) as a "member of the organized police department of any municipal corporation[.]" If the peace officer was engaging in a duty imposed upon him by statute, rule, regulation, ordinance or usage, that officer is in the performance of his official duties for purposes of R.C.2903.13(C)(3). State v. Duvall (June 6, 1997), Portage App. No. 95-P-0141, unreported, 1997 Ohio App. LEXIS 2464, at *12-13.
Applying R.C. 2903.13, the trial court required the State to show only that Defendant knowingly caused or attempted to cause physical harm to a person, and that the alleged victim was in fact a police officer in order for the case to be tried as a felony. The State was not required to show that the Defendant was probably aware of the fact that the victim was a peace officer.
Defendant has not pointed to any authority in support of the proposition that he would have this Court adopt. The trial court's application of law was, however, analogous to similar applications of law in other jurisdictions. See State v. Middleton (January 20, 1998), Stark App. No. 1997CA00158, unreported, 1998 Ohio App.LEXIS 325, at *4 (holding that it is not necessary for the offender to know that his victim is a police officer in order to be guilty of enhanced degree of the offense of felonious assault of a peace officer pursuant to R.C. 2903.11); see, also, State v.Cantrell (March 24, 1989) Montgomery App. No. 11030, unreported, 1989 Ohio App. LEXIS 932, at *10. In the end, this Court concludes that the trial court correctly held that it is not necessary for the accused to know that the victim of his or her assault is a peace officer in order to elevate the offense of assault pursuant to R.C. 2903.13(A) to the offense of assault of a peace officer pursuant to R.C. 2903.13(C)(3). The General Assembly has articulated the elements of R.C. 2903.13 with sufficient clarity to indicate that the victim's status as a police officer shall elevate the criminal offense of assault from a misdemeanor of the first degree to a felony of the fourth degree regardless of whether or not the accused specifically knows of the victim's status as a peace officer. Defendant's second assignment of error is, accordingly, overruled.
 C. Assignment of Error No. 3 The verdict [was] against the manifest weight of the evidence.
 For his third assignment of error, Defendant has argued that the verdict was against the manifest weight of the evidence. This Court disagrees.
To determine whether a conviction was against the manifest weight of the evidence, an appellate court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 3, quoting State v. Otten (1986), 33 Ohio App.3d 339, 340. The Ohio Supreme Court has held that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 47, 72 L.Ed.2d 652, 661. Overturning a conviction on these grounds is reserved for only the exceptional case. Otten, 33 Ohio App.3d at 340. An appellate court still must give deference to the jury's evaluation of the evidence and the credibility of witnesses. Gilliam, supra, at 3-4.
After a complete review of the record in the instant case, this Court cannot say that the jury clearly lost its way, creating such a manifest miscarriage of justice as to require the reversal of Defendant's conviction. Defendant was convicted for a violation of R.C. 2903.13(A), which provides that, "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]"
Defendant deliberately ran toward Agent Posten and brushed by him in a way that one might reasonably find genuinely antagonistic and threatening. Additionally, while Agent Posten was grappling with an attacker, Defendant approached Officer Posten with his hands outstretched, reaching toward him in a potentially threatening manner. Lastly, Defendant's own admission that he might have "gotten too close" to Agent Posten, created room for the jury to infer that he was aware of the threatening nature of his own voluntary actions.
Although any one of the Defendant's actions taken in isolation from the surrounding circumstances may not necessarily constitute assault, evidence of Defendant's conduct viewed within the actual context of the alleged assault permits one to reasonably infer that Defendant caused or attempted to cause physical harm to Agent Posten.
After reviewing the record and weighing the evidence and all reasonable inferences, this Court concludes that the jury did not clearly lose its way and create a manifest miscarriage of justice. Defendant's third assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgement of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 ___________________________ BETH WHITMORE
BATCHELDER, P.J., SLABY, J., CONCUR.